UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:12-CV-60220-WPD

MANHATTAN LEASING ENTERPRISES, LTD.,
as assignee of Elegante Leasing, Ltd.,

      Plaintiff,

v.

SHAWN NELSON, an individual,
and LOUIS MARTIN BLAZER, III,
an individual,

      Defendants.
_____/

## AFFIDAVIT OF DAMAGES

BEFORE ME, the undersigned authority, personally appeared MEL STEINBERG, to me well known, who, having been duly sworn, deposes and says:

1. My name is MEL STEINBERG. I am a representative of Plaintiff, MANHATTAN LEASING ENTERPRISES, LTD. (hereinafter "MANHATTAN") in the above referenced action and make this affidavit upon my own personal knowledge.

2. On or about April 6, 2009, Elegante Leasing, Ltd. (hereinafter "Elegante") and SHAWN NELSON (hereinafter "NELSON") entered into a Motor Vehicle Lease Agreement (hereinafter the "Lease"), whereby Elegante leased to NELSON ("Nelson"), one 2009 Mercedes Benz S-550, with a VIN of WDDNG86X69A280346 for $146,260.40, which was broken up, in material part, with the first payment in the amount of $3,658.68 and the remainder into fifty-eight monthly payments in the amount of $1,829.34. See Motor Vehicle Lease Agreement, attached hereto as Exhibit "A". In addition to which, as set forth in the Open End Purchase Option Rider (hereinafter the "Rider") at the end of the lease term, NELSON was obligated to either purchase the Vehicle from



Elegante for $22,500.00 or pay to Plaintiff the difference between the net sales price and $22,500.00 (hereinafter the "Option Price"). See Rider, attached hereto as Exhibit "B".

2. In the event the Lease was terminated by NELSON and/or NELSON defaulted under his payment obligations as set forth therein before the end of the scheduled lease term, NELSON was obligated to pay Elegante all payments then past due and for all future payments for the entire term of the lease, including the Option Price minus the reasonable wholesale value of the Vehicle. See Section 2 of the Open End Purchase Option Rider.

3. Contemporaneously with the Lease, Defendant, BLAZER, executed a Personal Guaranty agreeing to be personally bound by the terms and conditions of the Lease (hereinafter the "Personal Guaranty"). See Personal Guaranty, attached hereto as Exhibit "C".

4. The rights under the Lease (but not the obligations) were assigned by Elegante to All Points Capital Corp., which were subsequently re-assigned to Plaintiff. See Re-Assignment of Lease, attached hereto as Exhibit "D".

5. On or about January 25, 2011, Elegante assigned its rights under the Lease to Plaintiff. See Assignment, attached hereto as Exhibit "E".

6. NELSON defaulted on the Lease as a result of his failure to make payments under the Lease beginning in June 1, 2011, and further defaulted on the Lease as a result of his failure to return the Vehicle to MANHATTAN's possession after default despite Plaintiff's repeated demands for the return of the Vehicle. The Vehicle is currently missing and otherwise not in MANHATTAN's possession.

7. As a result of NELSON's default on the Lease, pursuant to the terms of the Lease, Plaintiff has been damaged in the amount of $96,506.84 (the accelerated balance due under the Lease plus late charges), which, as of the date of the filing of this lawsuit is the amount due and owing under the Lease.

8.  BLAZER is in default of the Personal Guaranty by failing to make payment to Plaintiff under the Lease upon NELSON's default on the Lease.

9.  The total amount of damages Plaintiff has incurred is $96,506.84.

FURTHER AFFIANT SAYETH NAUGHT.

_____
MEL STEINBERG

Subscribed and sworn to before me this ___ day of April___, 2012 by Mel Steinberg who is: ✓ Personally known to me; or ___ Produced _____ as identification and who did take an oath.

_____
NOTARY PUBLIC, State of Florida

(Seal)



STEVEN K. PLATZEK
MY COMMISSION # EE 107177
EXPIRES: June 27, 2015
Bonded Thru Notary Public Underwriters

04/06/2009
Date of Contract

**MOTOR VEHICLE LEASE**
BETWEEN
AND   Shaun Nelson

Lease Number

Elegante Leasing, Ltd.
175 Atlantic Ave.
Oceanside, NY. 11572
(516) 594-2500
**LESSOR**

09040601

referred to as "Lessee"
612 Hemlock Drive
Street and Number
Corapolis, PA  15108
City                       State              Zip Code
Telephone_____
                Area Code           Number

1. **VEHICLE:** Lessor leases to Lessee the motor vehicle with standard factory installed equipment and optional accessories set forth below (hereinafter called the "Vehicle")

Year: 2009
Make: Mercedes Benz
Model: S-550
Body Style: Sedan
Color: Barolo Red/Savan
Vehicle Id. #: WDDNG86X69A280346

2. **TERM AND RENT:** Vehicle is leased for the term of 59 Months with rental as follows:

A. 1 @ Month(s) at $ 15,658.68   Plus Taxes and DMV Fees
B. 58 @ Month(s) at $ 1,829.34   Plus Taxes and DMV Fees

Monthly rental shall be paid in advance on the same day of each month as Vehicle is delivered to Lessee ("commencement date") except, at option of Lessor, if Vehicle is delivered after the first day of any month, a pro rata charge may be made for month of delivery and, thereafter, regular monthly payments shall be made on the 1st day of each month or such other day as Lessor may designate. Items of additional rent shall be paid as billed. Rent and additional rent shall be paid to Lessor at its offices designated above or, if this lease is assigned by Lessor, then at such place as designated in writing by assignee. If payment is not made on the due date, or within 10 days thereafter, Lessee shall pay a late charge of 5 cents per dollar of amount of such payment. Lessee may operate vehicle for 12000 miles per year (or pro rata monthly equivalent) without mileage charge. If annual mileage allowance (or pro rata monthly equivalent) is exceeded, Lessee shall pay $0.20 for each mile over limit.

3. **OPERATION:** Lessee represents Vehicle will be principally operated and garaged in the State of ___PA___ and will be used by Lessee for its ___Business___ BUSINESS AND COMMERCIAL purposes. _____
S N

4. **SECURITY:** Lessor acknowledges Lessee has deposited the sum of of ___0.00___ as security for Lessee's performance of all terms and conditions of this lease. Such sum shall be returned to Lessee at termination hereof, after Lessee has paid all sums required under this lease and any rider and fulfilled all other obligations to Lessor on this lease or any other lease.

5. **MAINTENANCE AND REPAIRS:** Lessee shall be responsible for all maintenance and repairs to Vehicle in accordance with recommendations of Lessor and Vehicle Manufacturer and consistent with Conditions of Reasonable Usage below. If Lessor provides a maintenance and repair program, a separate rider will be signed by Lessor and Lessee covering same.

6. **INSURANCE:** Lessee shall be responsible for providing the insurance coverages set forth below protecting the interests of Lessor and Lessee against bodily injury, property damage, comprehensive fire and theft and collision (with maximum deductible limits) as follows:

A. Minimum Bodily Injury Liability                    $100,000.00/$300,000.00
B. Minimum Property Damage Liability                  $50,000.00
C. Collision Damage to Vehicle (deductible)           $1000.00 Deductible
D. Comprehensive Fire and Theft (deductible)          $1000.00 Deductible

Lessee shall deliver such policy to Lessor at commencement of term. Lessor shall have no obligation to provide any insurance. If Lessor provides insurance, a separate rider will be signed by Lessor and Lessee simultaneously herewith covering same. If Lessee is unable to obtain or to continue to maintain insurance as required above, Lessor may, at its option, provide such insurance and the cost of same, calculated on a monthly basis, shall be charged to Lessee as additional rent, or, if Lessor elects not to provide insurance, the lease shall terminate on the date such insurance is no longer in effect. The insurance policy required above shall be provided by an insurance company licensed under the laws of the State of principal operation and garaging of Vehicle; and same shall name Lessor and Lessee as insured parties and Lessor as loss payee. Failure of Lessee to comply with any provision of a policy (whether provided by Lessor or Lessee) including, without limitation, nonpayment of premiums, providing any required notice of cooperation, shall be deemed a default under this lease causing termination. Lessee shall: pay the specified deductible limit as additional rent; notify Lessor immediately upon discovery of any damage or loss to Vehicle (whether by accident, theft, malicious mischief, vandalism, unknown origin, or otherwise), and provide written notice thereof within 24 hours. If Lessee fails to comply with any insurance policy or to notify Lessor and the insurance company of any insured claim, damage or loss to or of Vehicle, Lessee shall nonetheless pay for same as additional rent, and if the foregoing includes damage to Vehicle, it is to be determined in accordance with Conditions of Reasonable Usage below. As to all insurance, Lessee appoints as Lessee's attorney-in-fact, to: make all claims; settle same in Lessor's sole discretion; receive payment of and execute or endorse in Lessee's name all documents, checks or drafts thereof; take the proceeds thereof and apply same to any damage or loss to Lessor's interests; and Lessee agrees that Lessor may do all the foregoing. If insurance payment for damage or loss, as aforesaid, is insufficient to cover actual damage or loss to Lessor's interests, then the difference shall be paid by Lessee as additional rent. If Vehicle is damaged and, in sole opinion of Lessor, it is a total loss, or same is stolen and not recovered, Lessor shall have the option of providing a substitute vehicle (which shall be reasonably similar to Vehicle), or if Lessor elects not to provide a substitute vehicle, then the lease shall be deemed terminated in the month of damage or loss and Lessee's obligation in either of such events shall be limited to any rent or additional rent due and payable through such month, plus the difference between any payment received from an insurance company and the amount of Lessor's actual damage or loss, as above, and any additional sums to be paid pursuant to any purchase option Rider signed by Lessor and Lessee. Upon any termination pursuant to the provisions of this paragraph (other than as described in the preceding sentence), the provisions of Paragraph 11, 12 and 13 below shall be applicable, with respect to termination.

7. **NO WARRANTIES:** LESSOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER MATTER WITH RESPECT TO VEHICLE, SAME IS LEASED AS IS.

TERMS AND CONDITIONS ON PAGE 2 OF THIS LEASE ARE PART HEREOF, LESSEE REPRESENTS IT HAS READ ALL MATTER ON BOTH PAGES OF THIS LEASE. THE LEASE IS NOT VALID UNTIL EXECUTED BY AN AUTHORIZED REPRESENTATIVE OF LESSOR.

IN WITNESS WHEREOF, the parties have executed this lease the day and year set forth above.

LESSOR: Elegante Leasing, Ltd.                    LESSEE:  Shaun Nelson

By: _____                       -By: _____
       Name            Title                             Name            Title
                                                         Shaun Nelson

**GUARANTY:** To induce Lessor's execution of the lease and any Rider thereto, and in consideration of same, Guarantor absolutely guarantees full payment and due performance of Lessee's obligations under the lease and any Rider thereto; Guarantor consents to any modifications or extension of the lease and any Rider thereto, waives notice of all modifications, extensions and defaults thereof, and acknowledges that the provisions of Paragraph 14 of the lease are made part hereof and are incorporated herein by reference.

_____
Guarantor

_____
Address

City              State              Zip Code
Telephone_____
                Area Code           Number

**EXHIBIT A**

8. VEHICLE USE: Upon Lessor's delivery of Vehicle to Lessee, Lessee shall thereafter: be responsible for operation of Vehicle (by it or others) pursuant to applicable law; pay (within the time mandated by applicable law) all fines, forfeitures or penalties issued, levied or imposed by government under any applicable law including, without limitation, all traffic or parking violations issued to Lessee, Lessor or Vehicle, (if Lessee fails to strictly comply with foregoing, Lessor may, at its option, pay same and bill Lessee thereof as additional rent or terminate lease and, in the latter event, Lessee shall nonetheless remain liable thereof, together with all damages incurred by Lessor under this lease or as a result of same, including reasonable counsel fees); keep Vehicle free of all taxes, liens or encumbrances created directly or indirectly by Lessee or through use of Vehicle, prohibit use of Vehicle in reckless or abusive manner or removal of Vehicle from continental U.S.

9. TAXES AND OFFICIAL FEES: Lessee shall pay as additional rent all taxes and official fees levied or charged by government or imposed by applicable law upon the Vehicle, lease use or operating taxes, and inspection, registration, license plate or title fees. Any specification of taxes or fees herein shall be deemed only an estimate and Lessee shall pay the full amount of same.

10. REGISTRATION: Lessor will register Vehicle in conformity with the laws of the State in which Lessee represents it will be principally operated and garaged, with cost of same billed to Lessee as additional rent. Lessee shall (i) have Vehicle inspected periodically in accordance with applicable laws, (ii) make any necessary repairs to Vehicle, (iii) pay for all of foregoing (unless otherwise specified in Rider signed by Lessor and Lessee). Notwithstanding method of registration, title of Vehicle shall remain in Lessor.

11. TERMINATION: This lease shall terminate without notice, automatically, at Lessor's option, upon: expiration of the term; filing by or against Lessee of a voluntary or involuntary petition or other proceeding in bankruptcy; Lessee's assignment for the benefit of creditors; appointment of a trustee or receiver for Lessee's assets; the obtaining of a judgement against Lessee or an execution or attachment against its property; failure of Lessee to pay rent or any additional rent hereunder for a period of 10 days after the due date thereof; Lessee's refusal to accept delivery of Vehicle; seizure of Vehicle by government for violation of applicable law; Lessee's failure to provide insurance; and Lessee's breach of or default under any provision of this lease or any Rider signed by Lessee and Lessor. Upon termination, Vehicle shall be returned to Lessor at its offices designated above and, if Lessee fails to return Vehicle, Lessor may take possession of same wherever found, without notice or legal process, and without liability to Lessor. At Lessor's option, Lessee's breach of or default under any provision of this lease or its termination, as above (other than by due performance through the specified term), shall be deemed a breach of or default under any other agreement between Lessee and Lessor, permitting Lessor's termination of same, and any breach of or default under such agreement shall be deemed a breach or default hereof. Upon termination, whether pursuant to the provisions of this paragraph or any other paragraph of this lease or any Rider hereto, Lessor shall have the rights specified herein, in this lease or Rider including, without limitation, the provisions of 12 and 13 below.

12. GENERAL DAMAGES: Upon termination of lease, Lessor shall have the right to recover from Lessee the Vehicle, the sum of all rent, additional rent and late charges due from commencement date through month of termination or date Vehicle is returned to or repossessed by Lessor, whichever later occurs; and all consequential damages sustained by Lessor from date of lease through month of termination including, without limitation, overhead costs, Lessor's financing costs, loss of profit, loss of balance of rent through lease term, depreciation in value of Vehicle, repossession expenses, sums calculated as due in excess of Conditions of Reasonable Usage, reasonable counsel fees as below. In lieu of foregoing, at option of Lessor, it may elect liquidated damages provided below.

13. LIQUIDATED DAMAGES: Upon termination of lease, Lessor may elect to recover liquidated damages from Lessee as follows: the Vehicle; the sum of all rent, additional rent and late charges from commencement date through month of termination or date Vehicle is returned to or repossessed by Lessor, whichever later occurs, a sum equal to 50% of the balance of rentals following termination of Lessor's recovery of Vehicle, whichever is later; repossession expenses; sum calculated as due in excess of Condition of Reasonable Usage; and Lessor's reasonable counsel fees as below. As to the liquidated damages, Lessee acknowledges: at the lease date or commencement date, it is impossible to determine condition of Vehicle at termination, the effect such condition may have upon Vehicle's market value at termination, the difficulty in determining the general market for used Vehicle or the comparable cost of a new vehicle in relation to the used Vehicle at termination, the effect of inflationary factors commencement date to termination; the difficulty in calculating Lessor's loss attributable to is overhead in relation to Vehicle; that Lessee selected particular Vehicle and accessories to suit its needs, that other conditions may prevail in the marketplace after commencement and/or termination which may make the calculation of Lessor's loss difficult; and that Lessor engages primarily in leasing new vehicles (not used), therefore at termination, Lessor will be unable to obtain a lessee for the used Vehicle; that Lessor does not engage in retail sale of used vehicles, but generally sells same at wholesale. Based on all the foregoing, Lessee acknowledges the liquidated damages as fair and reasonable.

14. LEGAL MATTERS: THIS LEASE SHALL BE INTERPRETED IN ACCORDANCE WIT LAWS OF THE STATE OF NEW YORK AND REGARDLESS OF THE ORDER IN WHICH THE SIGNATURES OF THE PARTIES ARE AFFIXED, IT SHALL BE DEEMED EXECUTED AT LESSOR'S PLACE OF BUSINESS; LESSEE AND ANY GUARANTOR HEREOF CONSENT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF NEW YORK AND AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING, DIRECTLY OR INDIRECTLY, FROM THIS LEASE SHALL BE LITAGATED ONLY IN COURTS HAVING SUCH SITUS; LESSEE AND ANY GUARANTOR HEREBY WAIVE PERSONAL SERVICE OF ANY LEGAL PROCESS UPON THEM ARISING, DIRECTLY OR INDIRECTLY, FROM THIS LEASE OR ANY GUARANTY HEREOF AND CONSENT THAT SERVICE OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, DIRECTLY TO THEM, RESPECTIVELY, AT THEIR ADDRESS SET FORTH HEREIN OR AS OTHERWISE BE DESIGNATED BY THEM IN WRITING, ABD SERVICE SO MADE SHALL BE COMPLETE 2 DAYS AFTER POSTING, AS AFORESAID, IN ANY ACTION OR LEGAL PROCEEDING ARISING, DIRECTLY OR INDIRECTLY, FROM THIS LEASE OR ANY GUARANTY HEREOF, LESSEE AND ANY GUARANTOR WAIVE TRIAL BY JURY AND IF LESSOR SHALL BE SUCCESSFUL IN ANY SUCH ACTION OR LEGAL PROCEEDING, IT SHALL BE ENTITLED TO RECOVER ITS REASONABLE COUNSEL FEES AND THE EXPENSE OF SUCH LITAGATION.

15. CONDITIONS OF REASONABLE USAGE: Without limiting Lessee's obligation to maintain and repair Vehicle as set forth in Paragraph 5, Lessee shall comply with Vehicle Manufacturer's warranty program and Manufacturer's owners manual and provide all gasoline, oil, lubrication, anti-freeze, tire rotation and other items in order to keep Vehicle, its body and parts in good working order and condition throughout the term and, upon termination it shall return same to Lessor in the same condition as delivered, subject only to the following Conditions of Reasonable Usage: Vehicle must be operating and in good mechanical condition, with no missing parts or equipment; a matching set of 5 tires must be on Vehicle with at least 25% tread remaining; no scratches, chips, rusted areas or dents over 1 inch long (or a series or combination of the foregoing extending over 1 inch); no mismatch of paint; no application of fleet colors, vehicle or Lessee identification; no inoperative mechanical or electrical systems; no windows or windshields cracked, broken, scratched, pitted or chipped; no broken lenses or sealed beams; no dents in bumper over 6 inches long; no scratches through any chrome to metal over 2 inches long; no broken grills or dents in same over 3 inches long; no broken head or tail lights; no missing mouldings or dents in same over 1 inch long; and no seats, seat backs, headliner, door panels, carpets, dashboard or other decorative or protective coverages torn, burned or defaced. Lessee shall pay to Lessor, as additional rent, the reasonable cost to repair, replace or otherwise compensate for loss or damage in excess of the Conditions of Reasonable Usage.

16. PURCHASE OPTION: Lessee shall have no right to purchase Vehicle during the term or upon termination unless so specified in a Rider signed by Lessor and Lessee. The provisions of such Rider shall govern calculation of rent, additional rent, termination and disposition of Vehicle to the extent same are inconsistent with the provisions hereof.

17. LESSOR'S ASSIGNMENT: Lessee acknowledges Lessor's right to assign this lease or any of its interests herein, and consents to any such assignments. Lessee represents the Vehicle was selected by it independently of Lessor and the Vehicle meets Lessee's needs and requirements. Lessee makes such representation to induce Lessor to execute this lease and, further, to induce any bank or funding source (Lessor's assignee) to provide the purchase moneys for the Vehicle to Lessor. Accordingly, Lessee agrees to comply with any notice of assignment, and it further agrees to pay all sums due, whether designated as rent, additional rent, or otherwise, directly to such assignee, and that all such payments and its obligations herein shall be absolute and unconditional, whether or not this lease is terminated by operation of law, any act of the parties, or otherwise, and it agrees to pay same notwithstanding any claim, defense, set-off or counterclaim whatsoever, whether by reason of breach of the lease or otherwise, which it may now or hereafter have against Lessor. Manufacturer of Vehicle or its dealer (Lessee reserving its right of recourse against same on account of any such claim, defense, set-off or counterclaim in an independent action). Lessee acknowledges that it holds the Vehicle and retains its possession for the benefit of Lessor or its assignee, as the case may be, and this leasehold is subject and subordinate thereto.

18. TITLE: This is an agreement of lease only; title to Vehicle shall remain at all time in Lessor; Lessee shall not sublet the Vehicle nor assign, pledge or otherwise encumber this lease, the Vehicle or any interest in them; if pursuant to a Rider signed by Lessee and Lessor this lease shall become a security agreement, Lessor or its assignee may file a Uniform Commercial Code Financing Statement (or its equivalent) without the signature of Lessor or Lessee (the latter in such instance being deemed the debtor) and the security interest then retained by Lessor or its assignee shall include the Vehicle, lease, all rent and additional rent now or hereafter due, other specified property and the proceeds of all of the foregoing.

19. GENERAL: Lessor shall not: be liable for loss or damage to personal property of Lessee in Vehicle during term or after termination; be liable for loss of business of Lessee or otherwise due to delay or failure to deliver Vehicle at commencement of term or due to Vehicle's failure to operate at any time during term, whether because of Manufacturer's breach of warranty or otherwise. If Manufacturer's factory price of Vehicle shall be increased prior to delivery of Vehicle to Lessee, the monthly rental of Vehicle shall be increased by a sum equal to the amount of such increase, plus any other cost Lessor incurs thereby, divided by the number of months specified in lease term above. Provided Lessee is not in default under any provision of this lease, and if Lessor is not responsible for maintenance and repairs, Lessor grants to Lessee during the lease term such of Vehicle Manufacturer's warranties which Lessor holds as Vehicle purchaser and as it may grant by the provisions of same, to be enforced by Lessee at its sole expense; the grant by Lessor, as aforesaid, is without recourse to Lessor and without representations or warranty as to any of same. Lessor has the right to inspect Vehicle on reasonable notice at any time. Any notice required in this lease shall be given in writing by registered or certified mail, return receipt requested, addressed to the party at the address specified herein or as otherwise specified by it in writing.

20. INDEMNIFICATION: Upon delivery of Vehicle to Lessee, it agrees to indemnify and hold Lessor harmless from all claims, suits, damages or losses including reasonable counsel fees, sustained by Lessor and arising, directly or indirectly, from the breach by Lessee of any provision of this lease or any Rider hereto, or the use or operation of Vehicle by anyone including, without limitation, Lessee or the violation of any applicable law.

21. DEFINITIONS: "Lease" shall include in its meaning any Rider signed by Lessor and Lessee; "Vehicle" shall include in its meaning the Vehicle, equipment and accessories specified above, and any other item added to Vehicle with or without Lessor's permission, and any substitute vehicle, its equipment and accessories provided by Lessor (Lessor has no obligation to provide same); "government" and "applicable law(s)" shall include in their meaning all Federal, State, Municipal or local government or agencies of government and the laws, statutes, ordinances, rules and regulations of same; "business purposes" shall include in its meaning any commercial or business use other than use of Vehicle for hire unless authorized by Lessor in writing; and "personal purposes" shall include in its meaning personal, family and household purposes.

22. MODIFICATION: This lease and any Rider hereto signed by Lessor and Lessee constitutes the entire agreement of the parties, all negotiations being merged herein, and may not be modified, abandoned or discharged, except by a further agreement in writing, signed by Lessor and Lessee; failure of Lessor to demand due performance of any provision shall not be deemed a waiver thereof. Lessor may demand such performance at any time; and if any provision is invalidated by a court, all other provisions shall remain in effect, except if such invalidity reduces the rental payments provided for herein, then Lessor, at its option may terminate this lease.

ELEGANTE LEASING LTD
175 ATLANTIC AVENUE
OCEANSIDE, NY 11572
516-594-2500
516-594-9482

## ADDENDUM TO LEASE AGREEMENT

To:   Shawn Nelson
From: Michael Testa

Re: Mercedes Benz

Mr. Nelson:

Please be advised that a change has been made to the lease agreement and all documents associated with it for your 2009 Mercedes Benz S-550 (VIN #WDDNG86X69A280346).

The name that appears on all the documents is incorrectly written as Shaun Nelson. The correct spelling should be Shawn Nelson.

Please read and sign this addendum acknowledging the change on our part.

If you have any questions, please feel free to contact us at any time.

SHAWN NELSON

Thank you
Michael Testa

MOTOR VEHICLE LEASE • OPEN-END PURCHASE OPTION RIDER

| 04/06/2009 | 09040601 | | Lease Number | | |
|---|---|---|---|---|---|
| Date of Lease | | | Shaun Nelson | | |
| Elegante Leasing, Ltd. | | | referred to as "Lessee" | | |
| referred to as "Lessor" | | | 612 Hemlock Drive | | |
| 175 Atlantic Avenue | | | Street and Number | | |
| Street and Number | | | Corapolis, PA 15108 | | |
| Oceanside, NY 11572 | | | City | State | Zip |
| City | State | Zip | Telephone: | | |
| Telephone: (516) 594-2500 | | | Area Code/Number | | |
| Area Code/Number | | | | | |

The lease entered into between Lessor and Lessee contemporaneously herewith is supplemented as follows:

1. Lessee may terminate the lease at any time, so long as Lessee is not in default under the lease or this Rider. Provided at the same time Lessee exercises the purchase option and pays the amount specified in Paragraph 2 below.
2. At the end of the lease term or its sooner termination by Lessee as provided in Paragraph 1 above, Lessee shall have the option to purchase the Vehicle (or require Lessor to sell it to Lessee's designee), in its condition and at its location at such time.
   If Lessee exercises the said option, the price payable by Lessee in cash shall be the total of $ __$22,500.00__ plus all rentals and other charges then past due and also the full amount of future rentals for the balance, if any, of the entire term stated in the lease, less such part of said future rentals as may be allocated in the lease or on Lessor's records to the cost of insurance, if Lessor provides insurance.
3. If the Vehicle is lost or stolen and not recovered, or destroyed, or its condition becomes such that in Lessor's opinion it is not worth repairing, the lease shall be deemed terminated as at the end of the month in which such events occurs (in no event does Lessor have any obligation to provide another or substitute Vehicle) and, thereupon, Lessee shall pay to Lessor all sums as calculated and determined under Paragraph 2 above, except that the amount payable by Lessee shall be reduced by the net amount of any insurance proceeds received by Lessor.
4. The aforesaid option may be exercised only by notice in writing received by Lessor not less than 15 days before the end of the lease term or the date of earlier termination under Paragraph 1 above.
5. If Lessee defaults under any provision of the lease or this Rider or does not exercise the option as provided above, Lessee shall pay to Lessor at the time of such default or the expiration or sooner termination of the lease all sums as calculated and determined under Paragraph 2 above, subject to the following: (i) at that time, Lessee shall return the Vehicle to Lessor and if Lessee fails to do so Lessor shall have the right (but is not obligated) to repossess it; on return of repossession of the Vehicle Lessor will make reasonable efforts to sell it at such time and place, for such price and on such terms as Lessor may deem advisable, at wholesale; from the proceeds of such sale, Lessor shall deduct its expenses including, without limitation, storage, repossession, repairs in accordance with the lease, and a disposition charge of $100.00 and, if Lessor institutes legal proceedings, Lessor's reasonable counsel fees and other expenses as provided in the lease, the balance remaining being the "net proceeds" of such sale; Lessor shall apply the net proceeds of such sale to Lessee's obligation, calculated as above; Lessee shall pay any resulting deficiency to Lessor and, if a surplus results, Lessor shall pay one-half (1/2) of such surplus to Lessee; or (ii) if the Vehicle is not returned or repossessed, all sums calculated and determined under Paragraph 2 and, if Lessor institutes legal proceedings, Lessor's reasonable counsel fees and other expenses as provided in the lease.
6. Upon Lessee's exercise of the option and Lessor's receipt from Lessee of the total amount payable by the Lessee hereunder Lessor shall execute and deliver such documents as may be necessary to transfer the Vehicle to Lessee or its designee, and if any insurance claim is then pending but uncollected, Lessor shall assign such insurance claim to Lessee or its designee. Transfer of the Vehicle to Lessee, as aforesaid, shall be without warranty, express or implied, of merchantability or fitness for a particular purpose or any other matter with respect to Vehicle, same being transferred as is and without recourse as against Lessor. Assignment of any insurance claim, as aforesaid, shall be without warranty and without recourse as against Lessor.
7. Lessee acknowledges that Lessor's rights but not obligations under the lease as supplemented by this Rider, are being contemporaneously assigned to __All Points Capital Corp__ ("Assignee") which has a purchase money security interest in the Vehicle and lease, to which Lessee's rights are subject and subordinate. Accordingly, Lessee agrees to give Assignee copies of all notices to Lessor and to pay Assignee the option price plus all rentals and other charges payable by Lessee under the lease or this Rider. Upon payment of all such sums and performance of all obligations, the security interest of Assignee will be satisfied. Lessee agrees not to assert against Assignee or any other assignee any defense, set-off or counterclaim that it may have under the lease as supplemented by this Rider or otherwise with respect to the Vehicle, but will assert same only against Lessor (if such claim exists).
8. The provisions hereof are in addition to and, if inconsistent, supersede those contained in the lease, and shall be binding upon Lessee, its successors and assigns, in favor of Lessor, its successors and assigns. Except as hereby supplemented and superseded, the provisions of the lease continue in full force and effect.

ALL OBLIGATIONS ARE COVERED IN THE BODY OF THE LEASE CONTRACT. THIS DOCUMENT IS TO PROVIDE FURTHER DISCLOSURES OF YOUR OBLIGATIONS.

Initials_____   Initials_____
     Lessee          Guarantor

IN WITNESS, WHEREOF, the parties have executed this Rider to the lease the day and year set forth above.

LESSOR: Elegante Leasing, Ltd.

By: _____
    Name / Title

LESSEE: Shaun Nelson

By: _____
    Shaun Nelson / Lessee

GUARANTOR:

By: _____



EXHIBIT B

PERSONAL GUARANTY

Guaranty made and delivered 04/22/2009 by the undersigned parties hereto, herein called "Guarantor", to ELEGANTE LEASING LTD (herein called "Creditor"), on behalf of SHAWN NELSON (herein called "Debtor").

In order to induce Creditor to grant to Debtor such credit (which term shall include loans or leases to Debtor) all of which is to the economic benefit or advantage of Guarantor, at such time, in such amounts, on such terms, and with or without security, as Creditor may in its discretion see fit, without notice to or consent from Guarantor, and in consideration thereof, Guarantor hereby unconditionally, absolutely and irrevocably guarantees that irrespective of the genuineness, validity or enforceability of any document relating to such credit or of Debtor's obligations in respect thereof, whether now or existing hereafter arising (herein called "Liabilities") and of the existence, validity or value of any security, Debtor will promptly and fully pay and perform all obligations with respect to the Liabilities of any security therefor, with interest and other charges, when due (whether at maturity or earlier by acceleration or otherwise). Guarantor consents that from time to time, without notice to or further consent from Guarantor and without releasing or affecting its liability hereunder, the time for payment or performance may be extended or accelerated in whole or in part, any security may be exchanged, released, enforced, sold, leased or otherwise dealt with without notice to or further consent from Guarantor and without releasing or affecting his liability hereunder, any security may be exchanged, released, enforced, sold, leased or otherwise dealt with, the provisions of any documents may be canceled, compromised, modified or waived, any other Guarantor or surety may be released, and any indulgence may be granted Debtor, as Creditor may in its discretion determine. Guarantor waives and consents to the non-perfection, lapse or disposition of or other dealing with any security interest or liens at any time granted to Creditor as security for any of the Liabilities. No payments by Guarantor except payment in full of the Liabilities shall entitle Guarantor to be subrogated to any of the right of Creditor, other than as waived in the next paragraph below. Guarantor shall have no right or reimbursement or indemnity whatsoever and no right of recourse to or with respect to any assets or property of Debtor or to any security for the Liabilities unless and until the Liabilities have been paid in full, other than as waived in the next paragraph below.

Guarantor hereby unconditionally and irrevocably waives and releases any and all claims against Debtor now or hereafter arising out of or related directly or indirectly to any of the obligations of Guarantor under this Guaranty or any liabilities of Debtor to Creditor, including (without limitation) any and all such claims arising from rights of subrogation, indemnity, reimbursement, contribution or set-off of Guarantor against Debtor, whether arising by contract or otherwise.

If any payment received by Creditor from any source on account of the Liabilities is set aside or required to be repaid, whether in any bankruptcy proceeding or otherwise, this Guaranty shall remain in full force and effect (or be reinstated) until Creditor has received an retained full payment of all the Liabilities; and Guarantor agrees to pay any such amount upon demand. Guarantor agrees that it will not transfer any personal assets to any party (except gifts of nominal value) without full and valuable consideration for such transfer. If Debtor or Guarantor shall at any time become insolvent or make a general assignment or if a petition in bankruptcy or any insolvency or reorganization proceeding shall be commenced by, against or in respect of Guarantor or Debtor, any or all of Guarantor's obligations in respect of the Liabilities shall, at the sole option of Creditor, forthwith become due and payable without notice. Guarantor agrees that Creditor may enforce the Liabilities without resorting first to any other right, remedy or security and the Liabilities shall, unless paid in full, survive any repossession of any security, whether or not such action constitutes an election of remedies against Debtor. This Guaranty cannot be terminated or changed orally and no provision hereof may be modified or waived except in writing by Creditor; it shall continue in effe[ct until] written notice of termination, which shall not release or affect Guarantor's lia[bilities as to lia]bilities theretofore created and any

EXHIBIT C

extensions and consolidations thereof; and it is a guaranty of payment and not one of collection. This Guaranty shall be binding upon Guarantor, jointly and severally if more than one, and its or his respective heirs, representatives, successors and assigns in favor of Creditor, its successors and assigns. GUARANTOR HEREBY WAIVES: PRESENTMENT, NOTICE OF DISHONOR AND PROTECT, NOTICE OF DEFAULT BY DEBTOR, OF SALE OR OTHER DEALING WITH ANY SECURITY AND ANY OTHER NOTICE TO WHICH GUARANTOR MIGHT OTHERWISE BE ENTITLED, JURY TRIAL, THE RIGHT TO INTERPOSE ANY COUNTERCLAIM OR CONSOLIDATE ANY OTHER ACTION WITH AN ACTION ON THIS GUARANTY, AND THE BENEFIT OF ANY STATUTE OF LIMITATIONS AFFECTING ITS LIABILITIES HEREUNDER OR THE ENFORCEMENT HEREOF.

GUARANTOR HEREBY SUBMITS TO THE JURISDICTION AND VENUE OF THE FEDERAL AND STATE COURTS IN THE STATE AND COUNTY OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE, IN ANY ACTION OR PROCEEDING BROUGHT UNDER THIS GUARANTY (IF CREDITOR CHOOSES TO BRING ANY SUCH ACTION OR PROCEEDING IN SUCH JURISDICTION AND VENUE), GUARANTOR AGREES THAT ANY PROCESS, NOTICE OF MOTION OR OTHER APPLICATION TO ANY OF SAID COURTS (OR A JUDGE THEREOF) IN ANY SUCH ACTION OR PROCEEDING SHALL BE SUFFICIENTLY SERVED IF SENT TO GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS SET FORTH BELOW (AND SERVICE SO MADE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID).

THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CREDITOR'S PRINCIPAL PLACE OF BUSINESS LISTED ABOVE, WITHOUT REGARD TO PRINCIPLES OR CONFLICTS OF LAW OR CHOICE OF LAW.

This Guaranty has been duly executed by Guarantor on the date set forth above.

Dated: 4.20.09

L. MARTIN BLAZER
(Name of Guarantor)
612 HEMLOCK DRIVE
CORAPOLIS, PA 15108
(Address of Guarantor)

_____
(Signature of Guarantor)

_____
(Social Security Number)

412-580-4289
(Home Telephone Number)

State of _____
County of _____

On the _____ day of _____, _____ before me personally came _____, to me known to be the individual described in and who executed the foregoing instrument and acknowledged that _____ executed the same.

_____
(Notary Public)

# RE-ASSIGNMENT OF LEASE

Lessee: Shawn Nelson

Account: 1025-00581

Vehicle Description: 2009 Mercedes S550

Vehicle Identification # WDDNG86X69A280346

Date of Lease: April 23, 2009

For valuable consideration receipt whereof is hereby acknowledged the undersigned, A Assignee of the lease described above, has re-assigned and does hereby re-assign to Manhattan Leasing Enterprises. (hereinafter referred to as "Manhattan Leasing"), its successors and assigns, all of the rights and remedies of the undersigned under said lease and any supplement thereto ("Lease") and all rentals, option payments and other sums due and to become due and all claims against the Lessee there under, hereby irrevocably authorizes Manhattan Leasing Enterprises to enforce said Lease and to collect, compromise, extend, discharge, release and otherwise realize upon and deal with said rights, remedies, claims and sums in such manner, at such times, by such means and on such terms as Manhattan Leasing Enterprises in its sole discretion deem advisable. This re-assignment is without warranty or representation by and without recourse to the undersigned.

Dated: February 1, 2012

All Points Capital Corp.

By: _____
Steven Jason
Senior Vice President



EXHIBIT

D

# GENERAL ASSIGNMENT AND BILL OF SALE

### SELLER AND ASSIGNOR:

ELEGANTE LEASING, LTD., a New York Corporation of 175 Atlantic Avenue, Oceanside, New York

### PURCHASER AND ASSIGNEE:

MANHATTAN LEASING ENTERPRISES, LTD., a New York Corporation with offices at 20 East Sunrise Highway, Suite 200, Valley Stream, New York 11581.

Pursuant to and in accordance with the provisions and requirements of the Purchase and Sale Agreement of even date herewith (the "Purchase and Sale Agreement") by and between Seller and Purchaser, and in exchange for the consideration specified therein, Seller does hereby sell, transfer, assign and deliver to Purchaser and Purchaser does hereby purchase and accept the transfer, assignment and delivery of all Seller's right, title and interest, both legal and equitable, in and to the following assets and property:

(a) All accounts and notes receivable and advances to suppliers;

(b) Sellers right and interest as Lessor and/or Lender in and to any Automobile Leases, Equipment leases, Loan Agreements, installment payment agreements or any related contracts or agreements.

(c) Seller's rights and interest in and to any contracts or agreements of indemnification or any agreements to guarantee, assume or pay any Automobile Leases, Equipment leases, Loan Agreements, installment payment agreements or any related contracts or agreements.

(d) Any and all rights or interest of Seller in and to any and all Judgments or liens owned or possessed by Seller as a creditor and/or judgment creditor, and any and all rights to enforce, levy, lien or collect payment thereon, including, but not limited to all of Seller's right and interest in and to a certain judgment entered in the Superior Court of the State of California,



Orange County on or about December 29, 2008 in favor of Seller as judgment creditor and against Joshua T. Hansen and/or Derrick Londell Armstrong as judgment debtors in the approximate amount of $232,153.60.

(e) All rights of Seller in and to any pending claims or causes of action or any pending lawsuits or actions brought by Seller to recover monies allegedly due and owing Seller pursuant to the terms of certain automobile or equipment leases or agreements.

(f) All rights of every kind under all other contracts assumed by Purchaser hereunder except those not assumed under an Assumption Agreement of even date between Seller and Purchaser;

(g) All of Seller's Notes Receivable and any and all other rights of Seller for the payment or collection of money.

(h) Sellers customer lists and accounts.

(i) All of Seller's rights and interest under the terms or provisions of any insurance policies, including, but not limited to any insurance policies in which Seller is named or designated as a beneficiary, assured, additional assured or loss payee.

TO HAVE AND TO HOLD the same, with the appurtenances thereof, unto Purchaser, its successors and assigns, forever, to its and their own proper use and behalf.

Notwithstanding the foregoing, Purchaser is not purchasing any of Seller's assets not listed above.

Seller agrees that it will at any time and from time to time, at the written request of Purchaser, execute and deliver to Purchaser all other and further instruments necessary to vest in Purchaser full right, title and interest in or to any of the property or interests in property which

this instrument purports to transfer to Purchaser.

Seller hereby constitutes and appoints Purchaser, its successors and assigns, the true and lawful attorneys, irrevocably, of Seller with full power of substitution, in the name of Seller or otherwise, and on behalf and for the benefit of Purchaser, its successors and assigns, to demand and receive from time to time any and all property of Seller hereby conveyed, transferred, assigned and delivered or intended so to be; to give receipts, releases and acquittances for or in respect of the same or any part thereof; to collect for the account of Purchaser all other items transferred to Purchaser as provided herein, and to endorse with the name of Seller any checks received on account of any such items; and to defend and compromise any and all actions, suits or proceedings in respect of any of the properties hereby assigned and transferred or intended so to be, that Purchaser, its successors or assigns shall deem desirable. Seller hereby declares that the foregoing powers are coupled with an interest and shall be irrevocable by it in any manner or for any reason.

IN WITNESS WHEREOF, Purchaser and Seller have caused this General Assignment and Bill of Sale to be fully executed and delivered this ___ day of January, 2011.

Manhattan Leasing Enterprises, Inc.
By: _____

Elegante Leasing Ltd.
By: _____

This Agreement incorporates the Previous agreement signed by MLE and ELL on May 6. 2010.

MLE _____   ELL _____

State of New York   )

County of Nassau   )

On the 26th day of January, 2011, before me the undersigned, personally appeared before me _Leonard Shomberg_, personally known to me and proved to me on the basis of satisfactory evidence to be the individual who name is subscribed to the within instrument and acknowledged to me that he executed same in his capacity and that by his signature on the instrument the individual executed the instrument.

ELISE ALARIMO
Notary Public, State of New York
No. 01AL6132287
Qualified in Queens County
Commission Expires August 22, 20 13

_Elise Alarimo_

Notary Public

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:12-CV-60220-WPD

MANHATTAN LEASING ENTERPRISES, LTD.,
as assignee of Elegante Leasing, Ltd.,

    Plaintiff,

v.

SHAWN NELSON, an individual,
and LOUIS MARTIN BLAZER, III,
an individual,

    Defendants.
_____/

## AFFIDAVIT OF COSTS

STATE OF FLORIDA

COUNTY OF PALM BEACH

    BEFORE ME personally appeared STEVEN K. PLATZEK who, after first being duly sworn, affirms and states as follows:

1. I am the Plaintiff's Attorney in regard to the above-referenced case.

2. The following are the costs expended in regard to the above-referenced case:

| | |
|---|---|
| Filing Fee (Complaint) | $350.00 |
| Service of Summons Fee (Defendants) | $210.00 |
| Total Costs: | $560.00 |

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Steven Platzek

    The foregoing instrument was acknowledged before me this 2nd day of April, 2012, by Steven Platzek, who is personally known to me and who did take an oath.

_____
Notary Public, State of Florida

**EXHIBIT 2**



S. IVY COLON
MY COMMISSION # EE 024178
EXPIRES: January 8, 2015
Bonded Thru Notary Public Underwriters